## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| EDWARD R. MURPHY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 06-2558-KHV-JTR |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

### REPORT AND RECOMMENDATION

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits under sections 216(i) and 223 of the Social Security Act. 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error, the court recommends that judgment be entered AFFIRMING the Commissioner's decision.

## I.   Background

Plaintiff's application for disability insurance benefits was denied by the agency initially and upon reconsideration. (R. 46, 54, 55). Plaintiff sought and on Mar. 23, 2006 was granted a hearing before an Administrative Law Judge (ALJ). (R. 46, 65-66, 76-82). Plaintiff was represented by an attorney, and plaintiff and a vocational expert testified at the hearing. (R. 46, 575-

620).  On Apr. 28, 2006, the ALJ issued a decision finding
plaintiff is not disabled within the meaning of the Act and
denying plaintiff's application.  (R. 46-53).

At step two of the sequential evaluation process, the ALJ
determined plaintiff has severe impairments of degenerative disc
disease, failed back syndrome, chronic obstructive pulmonary
disease, and depression, but that plaintiff's hypertension and
high cholesterol are not severe within the meaning of the Act,
and that attention deficit hyperactivity disorder is not
medically determinable in the circumstances.  (R. 47-48).  After
finding at step three that plaintiff's impairments do not meet or
medically equal any listed impairment, the ALJ assessed
plaintiff's residual functional capacity (RFC).  (R. 47-51).

The ALJ found plaintiff's allegations of disabling symptoms
not credible and considered the medical opinions of plaintiff's
treating physicians, Dr. Clymer, Dr. Hopkins, and Dr.
Striebinger.[1]  (R. 49-51).  He placed considerable reliance on
the opinion of Dr. Clymer, but gave little weight to the opinions
of Drs. Hopkins and Striebinger, finding them inconsistent with
plaintiff's admitted level of activity and with the reports of
Dr. Clymer.  (R. 49-51).  He found that plaintiff has an RFC for
a range of light work if allowed to alternate positions, and has

---

[1]Although the decision refers to "Dr. Steibinger," the
record reveals that it is Dr. Striebinger.  E.g., (R. 553-56).

additional mental and emotional limitations to simple, unskilled, routine, repetitive work.  (R. 50).

Based upon the testimony of the vocational expert, the ALJ found that plaintiff is unable to perform his past relevant work, but that he can perform other work existing in substantial numbers in the economy such as work as an interview clerk, an order clerk, or a credit authorizer.  (R. 51).  Therefore, he concluded that plaintiff is not disabled within the meaning of the Act, and denied the application.  (R. 52).

Plaintiff disagreed with the decision and sought review by the Appeals Council.  (R. 40-41).  On May 30, 2006, plaintiff submitted new evidence for the Appeals Council's consideration consisting of opinions signed by his treating physicians, Dr. Hopkins and Dr. Clark.  (R. 18-33).  On Nov. 20, 2006, the Appeals Council issued an order making the additional evidence part of the administrative record (R. 37), but denied plaintiff's request for review, finding no basis in the new evidence from Drs. Hopkins and Clark to change the ALJ's decision.  (R. 34-36).

On Nov. 6, 2006, plaintiff submitted an x-ray report from Dr. Reinsel taken Sept. 26, 2006, and a nerve conduction study from Dr. Ryan taken Aug. 29, 2006.  (R. 14-17).  On Nov. 22, 2006 plaintiff submitted a radiology report from Dr. Hopkins taken Nov. 9, 2006.  (R. 10-13).  On Dec. 16, 2006, the Appeals Council set aside their action taken Nov. 20, 2006, but denied the

request for review, again finding no basis to review the ALJ's decision.  (R. 6-9).  In their Dec. 16 notice, the Appeals Council found that the new evidence submitted in Nov. 2006 (Dr. Reinsel's x-ray report, Dr. Ryan's nerve conduction, and Dr. Hopkins radiology report) related to a time after the ALJ's decision and did not affect the decision regarding disability on or before, Apr. 28, 2006.  (R. 7).  Therefore, the Appeals Council did not order that evidence to be made a part of the administrative record, and returned that evidence to plaintiff in case he decided to apply for disability beginning after Apr. 28, 2006.  Id.

Because the Appeals Council denied review, the ALJ's decision is the final decision of the Commissioner subject to judicial review.  (R. 6, 34); Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006); Threet v. Barnhart, 353 F.3d 1185, 1187 (10th Cir. 2003).  Plaintiff now seeks judicial review.

## II.  Legal Standard

The court's review is guided by the Act.  42 U.S.C. § 405(g).  Section 405(g) provides, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); White v.

-4-

Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial
evidence is more than a scintilla, but less than a preponderance,
it is such evidence as a reasonable mind might accept to support
the conclusion.  Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th
Cir. 2004); Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).
The court may "neither reweigh the evidence nor substitute [it's]
judgment for that of the agency."  White, 287 F.3d at 905
(quoting Casias v. Sec'y of Health & Human Serv., 933 F.2d 799,
800 (10th Cir. 1991)); Hackett v. Barnhart, 395 F.3d 1168, 1172
(10th Cir. 2005).  The determination of whether substantial
evidence supports the Commissioner's decision, however, is not
simply a quantitative exercise, for evidence is not substantial
if it is overwhelmed by other evidence or if it constitutes mere
conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d
222, 224 (10th Cir. 1989).

   An individual is under a disability only if that individual
can establish that he has a physical or mental impairment which
prevents him from engaging in substantial gainful activity and is
expected to result in death or to last for a continuous period of
at least twelve months.  42 U.S.C. § 423(d); see also, Barnhart
v. Walton, 535 U.S. 212, 217-22 (2002)(both impairment and
inability to work must last twelve months).  The claimant's
impairments must be of such severity that he is not only unable
to perform his past relevant work, but cannot, considering his

age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  Id.; 20 C.F.R. § 404.1520 (2006).

The Commissioner has established a five-step sequential process to evaluate whether a claimant is disabled.  20 C.F.R. § 404.1520; Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004); Ray, 865 F.2d at 224.  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has severe impairments, and whether the severity of his impairments meets or equals an impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Id. at 750-51.  If plaintiff's impairment does not meet or equal a listed impairment, the Commissioner assesses claimant's RFC.  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the process.  Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five, whether the claimant can perform his past relevant work, and whether he is able to perform other work in the national economy.  Williams, 844 F.2d at 751.  In steps one

through four the burden is on plaintiff to prove a disability
that prevents performance of past relevant work.  <u>Dikeman v.</u>
<u>Halter</u>, 245 F.3d 1182, 1184 (10th Cir. 2001); <u>Williams</u>, 844 F.2d
at 751 n.2.  At step five, the burden shifts to the Commissioner
to show other jobs in the national economy within plaintiff's
capacity.  <u>Id.</u>; <u>Haddock v. Apfel</u>, 196 F.3d 1084, 1088 (10th Cir.
1999).

Plaintiff claims that substantial evidence contained in the
new evidence submitted to the Appeals Council does not support
the ALJ's decision; that the ALJ erred in failing to accord
controlling weight or even substantial evidence to the medical
opinions of the treating physicians, Dr. Hopkins, Dr.
Streibinger, and Dr. Clark; and that the ALJ improperly evaluated
the credibility of plaintiff's allegations of symptoms resulting
from his impairments.  Plaintiff seeks remand for an immediate
award of benefits or remand for further proceedings to correct
the errors alleged.  (Pl. Br., 39-40).  The Commissioner argues
that the Appeals Council properly found that the new evidence
submitted did not require a change in the ALJ's decision, that
the ALJ properly weighed the medical opinions of the treating
physicians, and that the ALJ's credibility determination is
supported by substantial evidence in the record as a whole.  The
court will begin its analysis with consideration of the new
evidence submitted to the Appeals Council.

### III. New Evidence

The regulations provide for consideration of new evidence presented to the Appeals Council.

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision.  The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision.  It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 404.970(b).  The regulations also provide that

> If you submit evidence which does not relate to the period on or before the date of the administrative law judge hearing decision, the Appeals Council will return the additional evidence to you with an explanation as to why it did not accept the additional evidence and will advise you of your right to file a new application.

Id. § 404.976(b).  Where the Appeals Council accepts the new evidence and makes it a part of the administrative record, the court interprets those facts "as an implicit determination [plaintiff] had submitted qualifying new evidence for consideration."  Martinez v. Barnhart, 444 F.3d 1201, 1207 (10th Cir. 2006).  Such evidence, made a part of the administrative record by the Appeals Council, will be considered by the court in its review of the Commissioner's decision.  O'Dell v. Shalala, 44 F.3d 855, 859 (10th Cir. 1994).

-8-

This case illustrates application of both regulations quoted above.  Here, plaintiff submitted new evidence which was made a part of the administrative record by the Appeals Council and new evidence which was not.  (R. 10-33).  The evidence containing the opinions of Drs. Hopkins and Clark regarding plaintiff's capabilities and limitations was determined to be new, material, and related to the period on or before the ALJ's decision and was made a part of the administrative record by order of the Appeals Council.  (R. 18-37).  The medical reports of Drs. Reinsel, Ryan, and Hopkins, submitted at a later time than Dr. Hopkins' and Dr. Clark's opinions, were determined not to be related to the period on or before the ALJ decision and were returned to plaintiff in accordance with the regulations.  (R. 6-17).

Plaintiff does not argue that this new evidence was wrongly rejected by the Appeals Council on Dec. 16, 2006, and the court accepts the Appeals Council's rationale.  Therefore, the court will not consider the reports which were returned to the plaintiff.  (R. 10-17)[2].  However, in accordance with the dictates of <u>Martinez</u> and <u>O'Dell</u> cited above, the court will consider the new evidence made a part of the administrative record by Appeals Council order dated Nov. 20, 2006.  (R. 37).

---

[2]The court notes that although the reports were returned to plaintiff and not made a part of the administrative record by order of the Appeals Council, a copy of each report is include in the record as part of plaintiff's correspondence with the Appeals Council.

-9-

With regard to the new evidence, plaintiff specifically claims that the Commissioner erred in failing to accord controlling weight or at least substantial weight to Dr. Clark's opinion contained in the new evidence.  He argues this is so because Dr. Clark is a psychiatrist who treated plaintiff for four years, because the record contains no other opinion regarding mental impairments from a treating or examining source, and because "Dr. Clark's opinion is consistent with the other substantial evidence of record in that she opined that Mr. Murphy's pain was driving his depression and anxiety." (Pl. Br., 34).  The Appeals Council rejected Dr. Clark's opinion because it was inconsistent with Dr. Clark's treatment records, inconsistent with plaintiff's description of his daily activities, and inconsistent with the other evidence of record.  (R. 34-35).  It found, therefore, that Dr. Clark's opinion did not provide a basis to change the ALJ's decision.  <u>Id.</u>

Although plaintiff points to Dr. Clark's specialty in psychiatry, longevity of treatment, and lack of opinions from other treating or examining sources (factors which might be used to support Dr. Clark's opinion), he does not point to evidence which demonstrates the Appeals Council erred in the reasons given for rejecting Dr. Clark's opinion.  The ALJ recognized that Dr. Clark is a psychiatrist and a treating source.  (R. 48).  The ALJ applied the psychiatric review technique to evaluate plaintiff's

mental impairments (R. 47-48, 50 n.1).  Although the record does
not contain other treating source or examining source opinions
regarding plaintiff's mental impairments, it does contain the
psychiatric review technique form and the mental residual
functional capacity assessment form completed by the state agency
psychologists, who are non-examining source.  (R. 332-52).  As
the Appeals Council noted, Dr. Clark's treatment notes,
plaintiff's description of his activities, and other evidence of
record do not reflect the restrictions or limitations stated in
Dr. Clark's opinion contained in the new evidence.  (R. 325-32,
561-73); see also, (Comm'r Br., 14-15)(explaining how Dr. Clark's
opinion is inconsistent with the doctor's treatment notes, with
plaintiff's testimony, and with other evidence in the record).

     Although plaintiff has cited facts and factors which might
be seen as supporting Dr. Clark's opinion, that is not helpful to
plaintiff's argument.  "[T]he possibility of drawing two
inconsistent conclusions from the evidence does not prevent an
administrative agency's findings from being supported by
substantial evidence."  Cruse v. Bowen, 867 F.2d 1183, 1184 (8th
Cir. 1989)(quoting Consolo v. Fed. Maritime Comm'n, 383 U.S. 607,
620 (1966)).  Where the agency's conclusion is one of two
inconsistent conclusions supported by the evidence, the court
must affirm the agency's conclusion.

Plaintiff may also be seen to argue that the Commissioner erred at step two because the ALJ found that attention deficit hyperactivity disorder (ADHD) is not medically determinable in the circumstances of this case, whereas Dr. Clark opined that plaintiff has ADHD.  (Pl. Br. 33)(citing (R. 26)).  This argument fails for many of the same reasons plaintiff's previous arguments regarding new evidence fail.

As plaintiff argues, Dr. Clark opined that plaintiff has ADHD.  (R. 26).  However, this is a bare diagnosis presented in "Axis I" of the psychiatrist's "Mental Impairment Questionnaire." Id.  Neither the new evidence or Dr. Clark's treatment notes explain the diagnosis.  As the Appeals Council found, the diagnosis is not supported by Dr. Clark's treatment notes. Moreover, the ALJ noted that ADHD "is not supported by medical signs and findings or reports and observations of mental health professionals."  (R. 48).  The court found no reference in the administrative record or in Dr. Clark's treatment notes to a diagnosis of ADHD.  The closest reference the court found is in Dr. Clark's "Initial Psychiatric Evaluation" in which Dr. Clark mentioned a need to rule out Attention Deficit Disorder (ADD). (R. 331, 573).

Even assuming that Dr. Clark's reference to a need to rule out ADD relates to her later diagnosis of ADHD, the court cannot find that the ALJ erred in finding that ADHD is not a medically

determinable impairment in the circumstances of this case.
Although the "Initial Psychiatric Evaluation" contains a
reference to ADD, and Dr. Clark's opinion diagnoses ADHD, Dr.
Clark's treatment notes, and the other evidence of record simply
do not provide a basis from which one might conclude that ADHD is
a medically determinable impairment in the circumstances of this
case or that Dr. Clark later determined she could not rule out
ADD and diagnosed ADHD.

## IV. Credibility Determination

Plaintiff claims the ALJ erred in evaluating the credibility
of plaintiff's allegations of disabling symptoms, particularly
pain.  Specifically, he claims:  (1) plaintiff's prior work
record supports a finding of credibility and was not properly
considered by the ALJ (Pl. Br. 36-37); (2) although plaintiff
performs "daily activities such as light household chores,
walking for exercise, watching television, and reading," these
activities do not "refute Mr. Murphy's allegations of disabling
pain or establish his ability to perform sustained work
activities" (Pl. Br. 37); (3) treating and examining doctors have
indicated that plaintiff's "pain is reasonable and legitimate
given his medical history" (Pl. Br. 37); and (4) the ALJ failed
to properly consider plaintiff's testimony that plaintiff was
unable to continue to care for his foster child and that
alternate living arrangements were being made.  The Commissioner

argues that subjective testimony of pain, by itself, cannot establish disability; that the ALJ considered appropriate factors that are relevant to the credibility determination; that substantial evidence in the record supports the ALJ's analysis; and that the court should accept the ALJ's credibility determination as binding because there is not "a conspicuous absence of credible evidence to support the ALJ's conclusion." (Comm'r Br. 7)(quoting <u>Piatt v. Barnhart</u>, 225 F. Supp. 2d 1278, 1292 (D. Kan. 2002).

## A.  Standard Applicable to a Credibility Determination

An ALJ's credibility determinations are generally treated as binding on review.  <u>Talley v. Sullivan</u>, 908 F.2d 585, 587 (10th Cir. 1990).  "Credibility determinations are peculiarly the province of the finder of fact."  <u>Diaz v. Sec'y of Health & Human Serv.</u>, 898 F.2d 774, 777 (10th Cir. 1990).  Therefore, in reviewing the ALJ's credibility determinations, the court will usually "defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility." <u>Casias v. Sec'y of Health & Human Serv.</u>, 933 F.2d 799, 801 (10th Cir. 1991).  However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  <u>Huston v. Bowen</u>, 838 F.2d 1125, 1133 (10th Cir. 1988).

The Tenth Circuit has explained the analysis for considering subjective testimony regarding symptoms.  <u>Thompson v. Sullivan</u>, 987 F.2d 1482, 1488 (10th Cir. 1993) (dealing specifically with pain).

> A claimant's subjective allegation of pain is not
> sufficient in itself to establish disability.  <u>Gatson</u>
> <u>v. Bowen</u>, 838 F.2d 442, 447 (10th Cir. 1988).  Before
> the ALJ need even consider any subjective evidence of
> pain, the claimant must first prove by objective
> medical evidence the existence of a pain-producing
> impairment, <u>Luna v. Bowen</u>, 834 F.2d 161, 163 (10th Cir.
> 1987) (citing <u>Frey [v. Bowen]</u>, 816 F.2d [508,] 515
> [(10th Cir. 1987)]; <u>Nieto v. Heckler</u>, 750 F.2d 59 (10th
> Cir. 1984)), that could reasonably be expected to
> produce the alleged disabling pain.  <u>Luna</u>, 834 F.2d at
> 163; 42 U.S.C. § 423(d)(5)(A).  This court has stated:
> The framework for the proper analysis of Claimant's
> evidence of pain is set out in <u>Luna v. Bowen</u>, 834 F.2d
> 161 (10th Cir. 1987).  We must consider (1) whether
> Claimant established a pain-producing impairment by
> objective medical evidence; (2) if so, whether there is
> a "loose nexus" between the proven impairment and the
> Claimant's subjective allegations of pain; and (3) if
> so, whether, considering all the evidence, both
> objective and subjective, Claimant's pain is in fact
> disabling.  <u>Musgrave v. Sullivan</u>, 966 F.2d 1371, 1375-
> 76 (10th Cir. 1992) (citing <u>Luna</u>, 834 F.2d at 163-64).

<u>Thompson</u>, 987 F.2d at 1488.

In evaluating symptoms, the court has recognized a non-exhaustive list of factors which should be considered.  <u>Luna</u>, 834 F.2d at 165-66.  These factors include:

> the levels of medication and their effectiveness, the
> extensiveness of the attempts (medical or nonmedical)
> to obtain relief, the frequency of medical contacts,
> the nature of daily activities, subjective measures of
> credibility that are peculiarly within the judgment of
> the ALJ, the motivation of and relationship between the
> claimant and other witnesses, and the consistency or

compatibility of nonmedical testimony with objective
medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting
Thompson, 987 F.2d at 1489.  The Commissioner has promulgated
regulations suggesting relevant factors to be considered in
evaluating credibility which overlap and expand the factors
stated by the court:  Daily activities; location, duration,
frequency, and intensity of symptoms; factors precipitating and
aggravating symptoms; type, dosage, effectiveness, and side
effects of medications taken to relieve symptoms; treatment for
symptoms; measures plaintiff has taken to relieve symptoms; and
other factors concerning limitations or restrictions resulting
from symptoms.  20 C.F.R. § 404.1529(c)(3)(i-vii).

**B.    The ALJ's Findings**

Here, the ALJ noted that plaintiff alleged back, hip, and
leg pain of disabling severity.  He summarized the standard
applied for evaluating credibility, and specifically cited the
Luna decision.  The ALJ recognized that plaintiff has
degenerative disc disease, failed back syndrome, and a history of
multiple back surgeries.  (R. 47-49).  He recognized there is a
nexus between these impairments and plaintiff's allegations,
making it reasonable that a person with these impairments might
have symptoms as severe as alleged by plaintiff.  (R. 49).  He
considered and discussed the evidence of record and determined

-16-

that plaintiff's allegations of disabling symptoms are not credible in light of all of the evidence.  (R. 48-50).

The ALJ summarized plaintiff's testimony that he had pain of 5-7 on a scale of 10, that he had a loss of concentration and persistence, and that he spends half the day in bed and half in a recliner.  (R. 48).  He also noted testimony that plaintiff can walk one mile at a time, can stand fifteen to twenty minutes at a time, can do some housework, cook, exercise daily, watch three hours of television daily, and read the newspaper.  Id.  He stated that plaintiff "acknowledged that he cares for an eight-year-old foster child who has shaken baby syndrome, and that he would return to school if he had more money."  Id.

The ALJ found plaintiff's allegations of symptoms of disabling severity not credible.  (R. 49).  He stated that plaintiff's allegations are not consistent with the medical signs and findings, are not consistent with treating and examining physicians' reports, and are not consistent with Dr. Clymer's finding (after plaintiff recovered from his surgery) that plaintiff is able to do "some light work that would accommodate [plaintiff's] residual symptoms and limitations."  (R. 49)(quoting Dr. Clymer's treatment notes at (R. 538) stating plaintiff could work with a restriction to twenty pounds of lifting, and alternating from stand to walk every thirty to forty-five minutes).  The ALJ noted no significant adverse side

effects from medication and stated, "while claimant has a good work history, he cannot return to this work due to heavy physical demands and he may not be highly motivated to seek other less physical but less remunerative employment." (R. 50). Finally, the ALJ noted that plaintiff's level of daily activities "demonstrates an intact level of physical ability, concentration and persistence consistent with some forms of work." Id.

### C.   **Analysis**

As plaintiff argues, a poor work history may detract from a plaintiff's credibility and a good work history may support a plaintiff's credibility. (Pl. Br. 36)(citing Watson v. Barnhart, 194 Fed. Appx. 526, 531 (10th Cir. 2006); and Schaal v. Apfel, 77 F.3d 1210, 1213 (2d Cir. 1998)[3]). Plaintiff notes that plaintiff worked for one employer his entire adult life, returned to work after surgeries despite pain, tingling, numbness, and doctors' restrictions, and only quit work after being advised to do so by his doctor. (Pl. Br. 36). He argues that this record supports a finding of credibility of his allegations of disabling symptoms, and the ALJ's contrary finding is error. (Pl. Br. 37). He argues that the ALJ did not cite to any record evidence to support his analysis that plaintiff may not be highly motivated

---

[3]The court was unable to find such a case at the citation provided. However, it is likely plaintiff was referring to Schaal v. Apfel, 134 F.3d 496, 502 (2d Cir. 1998) where the court found that a poor work history, in certain circumstances, may be probative of incredibility.

to seek less physically demanding but less remunerative work.
(Pl. Br. 36).  While a good work history might support a finding
of credibility, credibility determination is the province of the
ALJ.  <u>Diaz</u>, 898 F.2d at 777.  Here, the ALJ specifically noted
that plaintiff has a good work history, but he also noted that
plaintiff's past work involved significant pay, that plaintiff
could not return to his past work due to his impairments, and
that work within plaintiff's RFC would provide less pay.  (R.
50).  Plaintiff argues that the ALJ did not cite to record
evidence to support his conclusion.  However, evidence in the
record as a whole supports the ALJ's conclusion.  The evidence
shows that plaintiff received wages from a single employer from
1988 through 2002, and that his pay ranged from a low of near
forty thousand dollars in 1990 to a high of over fifty-five
thousand dollars in 1997.  (R. 93-97, 114-17).  The ALJ was aware
of this evidence and had the opportunity to observe and listen to
plaintiff at the hearing.  His inference from these facts (that
plaintiff may not be motivated to seek work which is within his
RFC but which will provide less pay than plaintiff made in his
past work) is reasonable in the circumstances, and the court may
not impose its own view where the evidence permits and does not
preclude the view of the ALJ.

        With regard to plaintiff's daily activities, plaintiff does
not deny that he performs the activities found by the ALJ.

Rather, he argues that his "testimony regarding his lifestyle and daily activities does not contradict his reports of disabling pain." (Pl. Br. 38). He points to his testimony that although he cares for his foster child, caring for the child makes his back pain worse and alternative arrangements are being made for the child (Pl. Br. 38); that plaintiff must lie down and use an ice pack on his back after he walks one mile for exercise; and that treating and examining physicians "have indicated time and time again that Mr. Murphy's pain is reasonable and legitimate given his medical history." (Pl. Br. 37). Plaintiff's argument misses the point. The question is not whether plaintiff's impairments cause pain, but whether the pain is of such severity as to be disabling. The ALJ acknowledged that plaintiff has impairments which cause pain. He considered and evaluated all of the evidence together, and concluded that plaintiff's pain is not of disabling severity as alleged.

The evidence supports the findings and reasons stated by the ALJ. Plaintiff points to additional testimony and evidence which might indicate the symptoms are more severe than found by the ALJ. Plaintiff essentially argues that the ALJ did not accept, but should have accepted, his explanations and the limitations found by Drs. Hopkins and Striebinger. The ALJ is the fact-finder charged with weighing the evidence and determining the credibility of plaintiff's allegations. Here, he did so. He

affirmatively linked his credibility determination to substantial evidence in the record as the law requires.  More is not required.  The fact that the ALJ might have given greater weight to certain evidence or might have viewed certain evidence differently does not require him to do so.  As discussed above, "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."  Cruse, 867 F.2d at 1184 (quoting Consolo, 383 U.S. at 620).  And, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988).  Therefore, where the ALJ has reached a reasonable conclusion that is supported by substantial evidence in the record, the court will not reweigh the evidence and reject that conclusion even if it might have reached a contrary conclusion in the first instance.  The court finds no error in the credibility finding, and next considers the ALJ's evaluation of the medical opinions.

## V.   Medical Opinions of Treating Physicians, Drs. Hopkins and Striebinger

Plaintiff claims it was error for the ALJ to fail to give controlling weight or at least substantial weight to the opinions of treating physicians, Dr. Hopkins and Dr. Striebinger.  The Commissioner argues that Drs. Hopkins, Striebinger, and Clymer

are all treating specialists, that in such cases it is for the
ALJ to resolve any conflicts, and that the ALJ properly weighed
the opinions.  Plaintiff devotes extensive space to citation of
the record evidence and explanation how that evidence, in his
view, supports his argument better than the ALJ's determination.
(Pl. Br. 27-32).  The Commissioner responds with an explanation
how the evidence, in his view, better supports the ALJ's
determination.  (Comm'r Br. 8-12).

As plaintiff's brief explains, the law in the Tenth Circuit
is clear how medical opinions from treating physicians are to be
evaluated.  A physician who has treated a patient frequently over
an extended period of time is expected to have greater insight
into the patient's medical condition.  Doyal v. Barnhart, 331
F.3d 758, 762 (10th Cir. 2003).

"If [the Commissioner] find[s] that a treating source's
opinion on the issue(s) of the nature and severity of [the
claimant's] impairment(s) [(1)] is well-supported by medically
acceptable clinical and laboratory diagnostic techniques and
[(2)] is not inconsistent with the other substantial evidence in
[claimant's] case record, [the Commissioner] will give it
controlling weight."  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2);
see also, Soc. Sec. Ruling (SSR) 96-2p, West's Soc. Sec.
Reporting Serv., Rulings 111-15 (Supp. 2007).

-22-

The Tenth Circuit explained the nature of the inquiry regarding a treating source's medical opinion in <u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300-01 (10th Cir. 2003).  The ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'"  <u>Id.</u> at 1300 (quoting SSR 96-2p).  If the opinion is well-supported, the ALJ must then determine whether the opinion is consistent with other substantial evidence in the record.  <u>Id.</u> (citing SSR 96-2p).  "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."  <u>Id.</u>

If the treating source opinion is not given controlling weight, the inquiry does not end.  <u>Id.</u>  A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927."  <u>Id.</u> Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  <u>Id.</u> at 1301; 20 C.F.R. §§ 404.1527(d)(2-6),

416.927(d)(2-6); <u>see</u> <u>also</u> <u>Drapeau v. Massanari</u>, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing <u>Goatcher v. Dep't of Health & Human Servs.</u>, 52 F.3d 288, 290 (10th Cir. 1995)).

After considering the regulatory factors, the ALJ must give reasons in the decision for the weight he gives the treating source opinion. <u>Watkins</u>, 350 F.3d at 1301. "When a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports 'to see if [they] "outweigh[]" the treating physician's report, not the other way around.'" <u>Goatcher</u>, 52 F.3d at 289-90(quoting <u>Reyes v. Bowen</u>, 845 F.2d 242, 245 (10th Cir. 1988)). "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so." <u>Watkins</u>, 350 F.3d at 1301. (citing <u>Miller v. Chater</u>, 99 F.3d 972, 976 (10th Cir. 1996) (quoting <u>Frey v. Bowen</u>, 816 F.2d 508, 513 (10th Cir. 1987)).

Here, as the Commissioner points out, there are three physicians who qualify as treating sources, Dr. Hopkins, Dr. Striebinger, and Dr. Clymer. The record before the ALJ contains extensive treatment records from each physician. (R. 290-320, 518-35, 557-60)(Dr. Hopkin's treatment records Oct. 1998 - Feb. 2006; (R. 364-73, 536-51)(Dr. Clymer's treatment records May 2003 - Feb. 2004); (R. 411-30, 552-56, 574)(Dr. Striebinger's treatment records Oct. 98 - Mar. 2006). Drs. Hopkins and

Striebinger were plaintiff's treating physicians during his first back surgery in Dec. 1998 (R. 421, 532), and during a surgery to stabilize the back in 2001.  (R. 411-12).  Dr. Clymer performed an independent medical evaluation of plaintiff in May, 2003 (R. 542-48), and subsequently performed a decompressive laminectomy surgery on the lumbar spine.  (R. 511-17).  Finally, Dr. Striebinger placed a dorsal column stimulator in plaintiff in Nov. 2005.  (R. 555).  Included in the new evidence made a part of the administrative record by the Appeals Council is a "Disorders of the Spine Questionnaire" completed by Dr. Hopkins on May 22, 2006 in which the doctor included his opinion regarding plaintiff's continuing limitations and capabilities. (R. 19-25).

In the treatment records, each physician from time to time suggested restrictions pending recovery from plaintiff's back surgeries.  Dr. Hopkins and Dr. Striebinger have stated subsequent opinions regarding ongoing restrictions which, if credited, would preclude all substantial gainful work.  (R. 19-25, 50, 574).  Dr. Clymer, on the other hand, in a treatment note dated Feb. 11, 2004, released plaintiff from his care and stated that plaintiff was permanently restricted to lifting twenty pounds occasionally and requiring alternation from stand to walk every thirty to forty-five minutes.  (R. 538-39).

The medical opinions of the treating sources lead to directly contradictory conclusions.  Because all treating source opinions are worthy of deference, when the treating source opinions lead to directly contradictory conclusions there will, of necessity, be substantial evidence in the record which is inconsistent with each treating source opinion (the contradictory treating source opinion).  Therefore, in such a case the ALJ may not, and in this case he properly did not, accord controlling weight to any treating physician's opinion.  Nonetheless, he is required to weigh the medical opinions, accord weight to each opinion, and explain why he accorded that weight.

Here, the ALJ gave substantial weight to the opinion of Dr. Clymer (R. 49-50) and little weight to the opinions of Drs. Hopkins and Striebinger.  (R. 50-51).  He stated that he discounted these opinions because they were inconsistent with plaintiff's good level of daily activity and with Dr. Clymer's conclusion that plaintiff had a good result from surgery and opinion that plaintiff could perform light work if he had the option for alternate sitting and standing.  (R. 50-51).

Plaintiff argues that Drs. Hopkins and Striebinger treated plaintiff for a longer period of time than Dr. Clymer and that, therefore, their opinions should be accorded greater weight. However, longevity of treatment is but one factor in weighing the opinions of treating sources.  Here, the ALJ noted that Dr.

Clymer was called upon to perform the last invasive surgery of plaintiff's spine, that he believed the surgery provided some pain relief, and that he provided extensive and detailed reports which were consistent with the other evidence of record.  Again, plaintiff does not dispute the ALJ's findings regarding Dr. Clymer's opinion and does not assert that the ALJ's reasons for discounting the other doctors' opinions are erroneous, rather he cites to other evidence in the record (evidence of which the ALJ was aware and which the ALJ stated he had considered), and argues that the ALJ should have given that evidence more weight.  The ALJ considered and weighed the evidence.  He stated reasons for assigning the weight as he did, and those reasons are supported by substantial evidence in the record.  He did not err in failing to accord controlling weight or great weight to the opinions of Drs. Hopkins and Striebinger.

Plaintiff also argues that the opinion of Dr. Hopkins which was accepted as new evidence by the Appeals Council shows that the ALJ erred in failing to accord controlling or great weight to Dr. Hopkin's opinion.  However, the Appeals Council specifically found that Dr. Hopkin's opinion was inconsistent with his treatment notes, with plaintiff's description of his daily activities, and with the other evidence of record.  As such, the Appeals Council's finding supports and confirms the ALJ's

findings, and the court finds no error in the weighing of the treating source medical opinions.

**IT IS THEREFORE RECOMMENDED** that judgment be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the final decision of the Commissioner.

Copies of this recommendation and report shall be delivered to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within ten days after being served with a copy. Failure to timely file objections with the court will be deemed a waiver of appellate review.  <u>Morales-Fernandez v. INS</u>, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated this 12th day of February 2008, at Wichita, Kansas.


                              s/John Thomas Reid
                              **JOHN THOMAS REID**
                              **United States Magistrate Judge**